July 19, ⎱
  1907.  ⎰

## OPINION OF THE JUSTICES.

The statute directing the governor to provide by contract for the railroad transportation of certain public officers imposes upon him a duty pertaining to the fiscal administration of the government, as to the performance of which the governor and council may require the opinions of the justices of the court.

The phraseology of an act is to receive a natural and reasonable construction, in the absence of proof that it was employed in a restricted or peculiar sense.

Under chapter 79, Laws 1907, the governor is required to provide for the railroad transportation of the justices of the supreme and superior courts, the bank commissioners, the superintendent of public instruction, the fish and game commissioners, and the commissioner of labor.

*To the Supreme Court:*

The governor and honorable council respectfully require the opinion of the justices upon the following question: Who are the salaried state officers for whose transportation authority is provided in section 2 of "An act to prohibit free transportation by common carriers and for other purposes," approved March 22, 1907?

CHAS. M. FLOYD, *Governor.*

STEPHEN S. JEWETT,      ⎫
WILLIAM H. C. FOLLANSBY, ⎪
HERBERT B. VIALL,        ⎬ *Councilors.*
J. DUNCAN UPHAM,         ⎪
FRANK P. BROWN,          ⎭

Concord, N. H., June 19, 1907.

*To His Excellency the Governor, and the Honorable Council:*

Section 2 of the act passed at the last session of the legislature, entitled "An act to prohibit free transportation by common carriers and for other purposes," provides that "the governor is hereby authorized and directed to contract prior to each regular and extra session of the general court, for the steam railroad transportation of the members, officers, and employees of the same; the governor is also hereby authorized and directed to contract for the transportation of the salaried state officers, appointed by the governor and council or elected by the legislature, whose

transportation expenses are made, by statute, a charge upon the state treasury, during their respective terms of office." Laws 1907, c. 79, s. 2. This provision of the statute not only empowers the governor to arrange by contract for the transportation expenses of certain state officials by steam railroads, but requires him to do so. It imposes a duty upon him in this respect, so far at least as its performance is reasonably practicable.

By article 40 [41] of the constitution, the governor is styled "a supreme executive magistrate." He is the head of, and his duties pertain to, the executive department of government, as contradistinguished from the legislative and judicial departments. While it is an essential principle of constitutional law, that these three governmental powers "ought to be kept as separate from, and independent of, each other as the nature of a free government will admit" (Bill of Rights, art. 37), it is difficult to understand why the duty imposed upon the governor by the statute under consideration is not an executive duty, within the meaning of the constitution. The nature of the duty—the exercise of judgment and discretion in the making of contracts—indicates that it is not exclusively a legislative duty, while no one would claim that it is a judicial duty. Hence the conclusion would seem to follow necessarily, that it is an executive duty which the legislature had the power to impose upon the governor as the "supreme executive magistrate" of the state. It pertains exclusively to the fiscal administration of the affairs of government and is plainly designated in the language of the constitution as executive.

In the attempt to perform that official duty, it is assumed that the governor is in doubt what state officers section 2 refers to, for the expenses of whose transportation upon official business he is required to enter into contracts with steam railroads in behalf of the state. Since the councilors are elected "for advising the governor in the executive part of government" (Const., art. 59 [60]), it is also assumed that he has required the advice of the council in the premises, whose "advice and consent" are made by article 55 [56] essential to the valid payment of the money from the treasury, which would be required for the full and effective performance of the duty imposed upon the governor by the statute in question. It thus appears that the governor and council, upon due consideration of an executive duty properly before them, involving an important question of law upon which they are in doubt, have jointly exercised the authority vested in that body "to require the opinions of the justices" of this court. Const., art. 73 [74]. No reason that is of controlling importance occurs to us why the request of the governor and council should not be

complied with.    We therefore deem it our duty to return an
answer to the question propounded.

For reasons presumably deemed sufficient to the legislature, a
certain class of officers is designated as falling within the purview
of the section of the statute above quoted; that is to say, "the
salaried state officers, appointed by the governor and council or
elected by the legislature, whose transportation expenses are made,
by statute, a charge upon the state treasury." The language of
the statute does not seem to be doubtful or ambiguous. Whether
in a given instance a person is a salaried state officer, whether he
is appointed by the governor and council or elected by the legisla-
ture, and whether his traveling expenses are made by statute
payable by the state, are questions whose solution in the affirma-
tive gives rise to the statutory duty imposed upon the governor.
To ascertain the legislative intention from the language used, it is
not necessary to resort to subtle or technical definitions. The
phraseology of the act is to receive a reasonable and natural con-
struction, in the absence of sufficient evidence that it was em-
ployed in a restricted or peculiar sense. And as we have not dis-
covered such evidence, our opinion is that the intention of the
legislature will be carried out by giving the language of section 2
its natural and ordinary meaning. Upon such a construction of
the statute, little doubt can be entertained that many officials
possess the statutory characteristics mentioned; as, for instance,
the justices of the supreme and superior courts (Const., art. 45,
[46] ; Laws 1905, c. 107, s. 1; Laws 1903, c. 101, s. 1), the bank
commissioners (P. S., c. 162, ss. 3, 4; Laws 1903, c. 80, s. 1), the
superintendent of public instruction (P. S., c. 94, s. 1; Ib., c. 286,
s. 10; Laws 1905, c. 58, s. 1), the fish and game commissioners
(Laws 1901, c. 79, s. 1; Laws 1903, c. 11, s. 1), the commissioner
of labor (Laws 1893, c. 48, ss. 1, 3), and perhaps others.

Whether the governor, as the chief executive officer of the
state, is authorized to make contracts with common carriers in be-
half of the state for the traveling expenses of state officials not
included in said section 2, which are made a charge, expressly or
by reasonable implication, upon the state treasury, is a question
we have not considered, since it does not seem to be included in
the request submitted.

Frank N. Parsons.
Reuben E. Walker.
George H. Bingham.

I entertain no doubt that it is the duty of the justices of the
supreme court, under article 73 [74] of the constitution, to give
opinions to the governor and council when required by them, upon

important questions of law touching the exercise of their executive powers or the performance of their executive duties in matters pending before them. I am equally confident that it is the duty of the justices not to give opinions upon other questions, even if the state or the public have a direct interest therein and the governor and council request the opinions. My difficulty in this instance arises from my doubts as to which side of the line of duty the question submitted falls. If the governor, in negotiating a contract for the transportation mentioned in section 2, chapter 79, Laws 1907, acts in "the executive part of government" (art. 59 [60]),—if the negotiation contemplated is a matter as to which he may, with the councilors or a majority of them, "hold a council" within the meaning of article 61 [62],—the governor and council undoubtedly have authority to require the opinions of the justices upon the question submitted. But if the statute merely makes the governor alone a special agent to negotiate the contract in behalf of the state, as evidently would be the case if the state treasurer or John Doe, instead of the governor, had been delegated for the purpose, it seems to me that the governor, either alone or in connection with the council, would not have authority to require the justices' opinions relating to the powers and duties of his agency. At first I took the latter view of the governor's function; but upon further investigation and reflection, I am inclined to the opinion, not without some doubts however, that the authority delegated to the governor is of an executive nature, such as he may properly "hold a council" with the councilors upon. Consequently, I have considered the question submitted, and join with my associates in the foregoing opinion, as an answer thereto.

WM. M. CHASE.

I do not think this case comes within the provision of the constitution (Const., art. 73 [74]) which requires the justices of the supreme court, when thereto requested, to advise the governor and council "upon important questions of law."

JOHN E. YOUNG.

July 19, 1907.